649 S.E.2d 509

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Brian Daniel MURRAY, Defendant Below, Appellant.**

**No. 33193.**

Supreme Court of Appeals of West Virginia.

Submitted: April 17, 2007.

Decided: June 5, 2007.

Dissenting Opinion of Justice Davis June 29, 2007.

Dissenting Opinion of Justice Maynard June 8, 2007.

Concurring Opinion of Justice Benjamin July 25, 2007.

Darrell V. McGraw, Jr., Attorney General, R. Christopher Smith, Assistant Attorney General, Charleston, for Appellee.

Byron Craig Manford, Esq., Martinsburg, for Appellant.

PER CURIAM.

The appellant appeals his conviction for failure to render aid at an automobile accident involving death and his conviction for failure to maintain control of his automobile. The appellant assigns ten grounds as error. For the reasons stated herein we reverse and remand for a new trial.

I.

On the evening of June 15, 2004, the appellant, Brian Daniel Murray, was driving home from a friend's house in McConnellsburg, Pennsylvania. As he neared his home in Morgan County, West Virginia, at approximately 9:30 p.m., appellant's vehicle collided with a bicycle ridden by Justin McAnulty, who was eighteen years of age. In his statement to a police officer, the appellant claims that he did not see what he collided with, but that he immediately stopped his vehicle, got out, looked around, and did not see anything except some damage to the right front fender and passenger side of his car.

Appellant then drove home from the accident scene and told his wife about the incident. The appellant and his wife returned to the scene and made two slow passes of the area where the collision occurred, but did not find anything. Upon returning home, the appellant's wife called the local police who came to their home and took a report.

The appellant further claims that the next morning he inspected his car in the daylight and discovered blood and shreds of clothing imbedded around the right headlight of his car. He then returned to the scene of the accident and found the body of Justin McAnulty. The appellant returned home and called 911 and went back to the scene to assist authorities in locating the body of the victim.

On September 7, 2004, the appellant was indicted by the grand jury of Morgan County for: "*COUNT I* (Failure to Render Aid at Accident Involving Death)," a violation of *W.Va.Code*, 17C–4–1; "*COUNT II* (Obstructing)," a violation of *W.Va.Code*, 61–5–17(a); and "*COUNT III* (Failure to Maintain Control)," a violation of *W.Va.Code*, 17C–6–1.

The trial on these charges began on Wednesday, February 23, 2005. At the beginning of the trial, during the *voir dire* process, the trial judge discussed with jurors how long the instant case might take to complete, indicating that a jury worked until 11:00 p.m. to complete a case the previous week. Similar comments were made by the judge on several other occasions during the trial.

In her opening statement the prosecuting attorney stated to the jury: "This case is about *accepting responsibility* when you are behind the wheel of a car and driving that car, and the Defendant, Mr. Murray's *failure to accept that responsibility*." (Emphasis added.) Additionally, the prosecuting attorney stated to the jury: "Now, he [defendant] did talk to the police and Mr. Murray *tells us* that he did go back and he looked and he just didn't see anything." (Emphasis added.) The prosecuting attorney also stated to the jury: "How do we intend to prove *what the Defendant knew?* It's a hard thing to do, *what's in somebody's mind,* what they saw, okay." (Emphasis added.) Finally, in her opening statement, the prosecuting attorney

told the jury: "[T]he State is going to ask you, the jury, to force Brian Daniel Murray *to accept the responsibility* that he agreed to accept when he got behind that wheel of the car and he drove ...." (Emphasis added.)

During closing arguments, the prosecuting attorney said, "... *accepting responsibility;* the Defendant, Brian Daniel Murray, needs to *accept responsibility* for his conduct." (Emphasis added.) The prosecuting attorney also stated: "So, how do I prove this? *Do I just ask the Defendant, 'Did you know? Did you see him?* Okay, *you said you didn't know, you said you didn't see him,* we'll let *you* go ....'" (Emphasis added.) Finally, the prosecuting attorney stated, "That's a person [another witness] that saw Justin McAnulty's bicycle at an hour when nobody could have seen it, if you believe the *testimony*—not the testimony, the statements—*of the Defendant.*" [1] (Emphasis added.)

The defendant did not take the stand in his own defense.

The case was submitted to the jury at 9:56 p.m. on Friday, February 25, 2005, the third day of the trial. Thereafter the appellant noted on the record his objections to the prosecuting attorney's comments during closing argument regarding the prosecuting attorney's use of the phrase "testimony ... of the Defendant," and moved for a mistrial because the defendant did not testify at the trial. The appellant's motion was denied.

At 12:30 a.m. on Saturday morning, February 26, 2005, the jury sent the judge a note which read, "First charge [Failure to Render Aid at Accident Involving Death] locked 11 guilty to one; second charge [Obstructing]

locked, ten guilty to two; three [Failure to Maintain Control], guilty. What do we do?" In response the court read a *Blessing,* 175 W.Va. 132, 331 S.E.2d 863 (1985) [2] instruction, and at 12:43 a.m. the jury returned to further consider their verdict.

Eleven minutes later at 12:54 a.m., the jury returned a verdict of guilty to Failure to Render Aid at Accident Involving Death, not guilty to Obstructing, and guilty to Failure to Maintain Control.

Thereafter, on March 8, 2005, the appellant filed a "Motion of the Defendant for New Trial; Motion for Judgment of Acquittal Notwithstanding the Verdict of the Jury." The trial judge denied the appellant's motion and sentenced the appellant to a determinate sentence of three years in the penitentiary on the Failure to Render Aid at Accident Involving Death charge, and fined the defendant one hundred dollars on the Failure to Maintain Control charge. The judge further ordered that if the appellant was not paroled upon the completion of one year in the penitentiary, that he be brought back before the court to be ordered to serve the balance of the sentence on home confinement.

It is from this conviction and sentence that the appellant appeals.

## II.

Appellant argues that the trial judge's decision not to grant his motion for a mistrial was error. This Court has indicated that the decision to declare a mistrial and discharge a jury is a matter within the sound discretion of the trial court. *State v. Williams,* 172 W.Va. 295, 304, 305 S.E.2d 251, 260 (1983)

---

**1.** We also observe from the record that in one instance the prosecuting attorney expressed her personal opinion of the evidence as follows:

"I don't think the evidence supports that [defendant's inability to see the victim due to the victim not having lights and reflectors on his bicycle]. I think the evidence supports that the accident occurred just over the fog line right where Officer Bean put that car on Trooper Petsko's drawing."

**2.** The trial court in the instant case gave substantially the same instruction as that which was given in *Blessing.*

In *State v. Blessing,* 175 W.Va. 132, 331 S.E.2d 863 (1985) (*per curiam* ) the jury foreman report-

ed a deadlock and the court provided the jury with further instructions regarding their continued deliberation. This Court in affirming the trial court cited Syllabus Point 2 of *State v. Johnson,* 168 W.Va. 45, 282 S.E.2d 609 (1981) as follows:

Where a jury has reported that it is unable to agree and the trial court addresses the jury urging a verdict, but does not use language the effect of which would be to cause the minority to yield its views for the purpose of reaching a verdict, the trial court's remarks will not constitute reversible error.

citing *State v. Craft*, 131 W.Va. 195, 47 S.E.2d 681 (1948).

We also stated in Syllabus Point 4 of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996):

This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*.

We begin our analysis with the appellant's second assignment of error relating to remarks made by the prosecuting attorney during closing argument.[3] The appellant's assertion that the prosecuting attorney's remarks were a comment upon the appellant's failure to testify implicates the Fifth Amendment of the *Constitution of the United States* and Article III, Section 5 of the *Constitution of West Virginia*.[4]

Historically, this Court has scrupulously protected a defendant's right to remain silent. *See State v. Nuckolls*, 166 W.Va. 259, 261, 273 S.E.2d 87, 89 (1980). Also, we have consistently held that "[f]ailure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syllabus Point 5 of *State, ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975).

In order to protect the right against self-incrimination, the West Virginia Legislature adopted *W.Va.Code*, 57–3–6 (1923), which provides that the failure of the defendant to testify cannot be the subject of comment before the court or jury by anyone.[5]

In *State v. Taylor*, 57 W.Va. 228, 235, 50 S.E. 247, 249 (1905) this Court explained the origin of the rule against self-incrimination by stating that "... the law, having brought the prisoner into court against his will, did not permit his silence to be treated or used as evidence against him." Later, this Court in *State v. Boyd*, 160 W.Va. 234, 240, 233 S.E.2d 710, 716 (1977), explained that:

The basis for the rule prohibiting the use of the defendant's silence against him is that it runs counter to the presumption of innocence that follows the defendant throughout the trial. It is this presumption of innocence which blocks any attempt of the State to infer from the silence of the defendant that such silence is motivated by guilt rather than the innocence which the law presumes.

In order to analyze cases involving issues of impermissible comments on the defendant's failure to testify at trial, this Court in Syllabus Point 6 of *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995) held:

Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or

---

3. The appellant's second assignment of errors states as follows:

The Trial Court committed plain and prejudicial error by not granting the Defendant's Motion for Mistrial after the Prosecuting Attorney of Morgan County, made an impermissible reference in closing regarding the Defendant's failure to testify, and expressed her own personal opinions as to the credibility of the State's witnesses; such comments were in violation of the State's duty to remain fair and impartial, especially in light of the nature of the offense charged.

4. *W.Va. Const.*, Art. III, Sec. 5 states as follows:

**3–5. Excessive bail not required.**
Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. Penalties shall be proportioned to the character and degree of the offence. No person shall be transported out of, or forced to leave the state for any offence committed within the same; nor shall any person, in any criminal case, be compelled to be a witness against himself, or be twice put in jeopardy of life or liberty for the same offence.

5. *W.Va.Code*, 57–3–6 (1923) reads as follows:

**Competency of accused as witness.**
In any trial or examination in or before any court or officer for a felony or misdemeanor, the accused shall, with his consent (but not otherwise) be a competent witness on such trial or examination; and if he so voluntarily becomes a witness he shall, as to all matters relevant to the issue, be deemed to have waived his privilege of not giving evidence against himself and shall be subject to cross-examination as any other witness; but his failure to testify shall create no presumption against him, nor be the subject of any comment before the court or jury by anyone.

extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

The law relating to questions involving comments by a prosecuting attorney before a jury has continued to be refined by the Court over the years. In *State v. Noe*, 160 W.Va. 10, 230 S.E.2d 826 (1976), overruled on other grounds by *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), a first-degree murder case, the prosecuting attorney in final argument said "Now, Freddie Joe Noe can't have his cake and eat it too. Now, you've either got an alibi or you don't." This Court in discussing the prosecuting attorney's comments stated "... by *inference*, it [prosecuting attorney's remarks] comments on *his* [the defendant] failure to explain how his fingerprints got on the pane of glass." (Emphasis added.) *Noe*, 160 W.Va. at 18, 230 S.E.2d at 831. In reversing the conviction this Court held:

> It is prejudicial error in a criminal case for the prosecutor to make statements in final argument amounting to a comment on the failure of the defendant to testify.

Syllabus Point 3 of *Noe, supra.* The Court in *Noe* further explained:

> We recognize that a certain latitude must be given to an attorney either for the defense or for the prosecution in final argument. We are aware that the intensity of the moment may be productive of language which is intemperate or overdrawn. However, this can never justify disregard for constitutional and statutory guarantees either directly or by inference or innuendo.

*Noe*, 160 W.Va. at 18, 230 S.E.2d at 831.

In *State v. Lindsey*, 160 W.Va. 284, 293, 233 S.E.2d 734, 740 (1977) this Court said that "... the State should studiously avoid even the slightest hint as to the defendant's failure to testify."

In *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979), a second-degree sexual assault case, the prosecuting attorney said in final argument:

> "None of those facts are in dispute. No one said those things didn't take place..."
> "You know, there is one thing I know which has been hidden in this case.... If Fred Muth [defense counsel] can think of one reason, one lousy little reason at all why this girl would turn a finger at his client sitting over there, other than the fact that he committed this crime, he would tell you what it was.... There is a motive, you know what it is, I know what it is, everybody knows what it is. It is because he did it. Whether he hangs his head there and won't look at you or not, he did it, and there is no one in this Court Room that ever said he didn't do it...."
> "Let me tell you reasonable doubt is not a cloak people come in and hide behind, and point fingers at people and says, 'Uh-huh, prove it.'"

*Green*, 163 W.Va. at 695, 260 S.E.2d at 265. In reversing the conviction in *Green*, this Court stated that "the remarks by the prosecution amounted to specific reference to Green's failure to testify" and held that:

> Remarks made by the State's attorney in closing argument which make specific reference to the defendant's failure to testify, constitute reversible error and defendant is entitled to a new trial.

Syllabus Point 5 of *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979).

In *State v. Nuckolls*, 166 W.Va. 259, 273 S.E.2d 87 (1980), a murder case, the prosecuting attorney in final argument said:

> If Lucille Nuckolls hadn't killed her husband that night we wouldn't be here. I haven't seen her, you haven't seen her, nobody in the Court Room has seen her. She is a person of mystery. No one has seen her. Did any one of the psychiatrists tell you this was catatonic schizophrenia? Catatonic is when you sit and stare with no expression at all. Don't say anything, you don't do anything, and it is also a way to snow people. It is a way to get in here and act and behave so that you say, "Why look at her. She is not paying any attention. She didn't do this, she didn't do that." It is what the psychiatrists told you when she took her examination didn't they? I want to know what was in Lucille

Nuckolls' mind when she killed her husband...

*Nuckolls,* 166 W.Va. at 262, 273 S.E.2d at 89. In reversing the conviction in *Nuckolls,* this Court cited to Syllabus Point 3 of *Noe, supra,* and found that the prosecuting attorney's statements "amounted to a comment upon the failure to the defendant to testify." *Nuckolls,* 166 W.Va. at 262, 273 S.E.2d at 89. Further, the Court, citing ABA Code DR 7-106(C)(4),[6] observed that the decision to reverse was reinforced by the prosecutor's prejudicial and inflammatory conduct during trial when the prosecutor offered to the jury his personal opinion when he said "[i]f Lucille Nuckolls doesn't have to pay under the law, I would be the first one, as chief law enforcement officer of this county, to tell you she didn't have to." *Nuckolls,* 166 W.Va. at 263, 273 S.E.2d at 90.

In *State v. Bennett,* 172 W.Va. 131, 304 S.E.2d 35 (1983) (*per curiam*), a delivery of a controlled substance case, the prosecuting attorney repeatedly said in final argument that the State's evidence was uncontradicted and had not been denied. Again relying on Syllabus Point 3 of *Noe, supra,* this Court found that the prosecuting attorney's remarks constituted an impermissible comment upon the failure of the of the defendant to testify, since the defendant was the only one who could have denied the drug offense.

In *State v. Swafford,* 206 W.Va. 390, 524 S.E.2d 906 (1999) (*per curiam*), a murder case, the prosecuting attorney said in final argument:

But for Walter Swafford and Mark Yoney, Joseph Hundley would be alive today. You didn't hear from Joseph Hundley from that witness stand. That's why the testimony of those girls was important.

Where would the State have been in this case if those girls had a good lawyer like Mike Gallaher [defense counsel] and they had said, 'We ain't telling you nothing. We don't'—'We got our constitutional rights. We ain't telling you nothing.' Where would we be? Where would we be?

All five of them would be walking the street, wouldn't they?

*Swafford,* 206 W.Va. at 393, 524 S.E.2d at 909. In reversing *Swafford* this Court stated that:

The general rule formulated for ascertaining whether a prosecutor's comment is an impermissible reference, direct or oblique, to the silence of the accused is whether the language used was manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be a reminder that the defendant did not testify. *United States v. Harbin,* 601 F.2d 773 (5th Cir.1979); *United States v. Muscarella,* 585 F.2d 242 (7th Cir.1978); *United States v. Anderson,* 481 F.2d 685, 701 (4th Cir.1973), *aff'd,* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974); *United States ex rel. Leak v. Follette,* 418 F.2d 1266 (2nd Cir.1969), *cert. denied,* 397 U.S. 1050, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970); *Hayes [Hays] v. Oklahoma,* 617 P.2d 223 (Okl.Crim.App.1980).

*Swafford,* 206 W.Va. at 393–4, 524 S.E.2d at 909–10, *quoting State v. Clark,* 170 W.Va. 224, 227, 292 S.E.2d 643, 646–7 (1982). The *Swafford* Court went on to compare the prosecuting attorney's statements with those in *Green, supra,* stating comments in each case suggested that the defense counsel had advised the defendant not to testify. Further, the Court observed that by referring to the fact that co-defendants did testify and that the victim could not testify, the prosecuting attorney's remarks "served to remind the jury that the defendant did not testify." *Swafford,* 206 W.Va. at 394, 524 S.E.2d at 910. With these observations, this Court reversed the conviction based upon the remarks of the prosecuting attorney.

In *State v. Mills,* 211 W.Va. 532, 566 S.E.2d 891 (2002) (*per curiam*) this Court held as reversible error the following comment by a prosecuting attorney made during closing argument: "[t]here are cases in which the murderer himself says, 'I am so

---

6. *See also* Rules of Professional Conduct, 3.4(e):

A lawyer shall not:

. . .

(e) in trial, ... state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused.

sorry; I am so sorry. I beg your forgiveness.' "

More recently, in *State v. Sprague*, 214 W.Va. 471, 590 S.E.2d 664 (2003) (*per curiam* ), a malicious assault case, the prosecuting attorney said in closing argument:

Now there's been a lot of talk and I do want to talk to you about venue. The Defendant, as you have noted, as you've seen from this trial, has not contradicted any of the State's evidence or any of the State's testimony basically about the events that occurred at Sta[ ]dard Hall.

*Sprague*, 214 W.Va. at 474, 590 S.E.2d at 667. In reversing the conviction this Court stated:

As the appellant did not testify, no matter what the intention of the prosecutor was, the prosecutor's comments necessarily served to accentuate and highlight the fact that the appellant sat silently without taking the stand, and no matter how harmless the intent, the remarks plainly amount to comment on the appellant's choice not to testify.

*Sprague*, 214 W.Va. at 474, 590 S.E.2d at 667.

As made clear by the foregoing cases, this Court has consistently held that when statements are made by the prosecuting attorney to the jury that suggest either that the defendant should have testified at his trial, or that direct the jury's attention to the fact that the defendant did not testify, we will reverse the conviction and remand the case for a new trial.

We next address whether this Court should apply the "plain error doctrine." At trial, appellant's counsel failed to raise contemporaneous objections to any statements of the prosecuting attorney. Instead, defense counsel called to the attention of the court only the statement by the prosecuting attorney which specifically referred to the " ... testimony ... of the defendant," and then only after the jury had retired and began its deliberations. Later, defense counsel in his post-trial motions raised the issue with respect to other statements by the prosecuting attorney that he contends were impermissible comments on the defendant's failure to testify at trial. Further, defense

counsel reasserted those grounds as part of the appeal in this case.

The appellee argues that because of the failure of defense counsel to object to the statements of the prosecuting attorney, the appellant waived error, if any, resulting from the trial judge's conduct. *See* Syllabus Point 6 of *Yuncke v. Welker*, 128 W.Va. 299, 36 S.E.2d 410 (1945).

The appellant argues that this Court should apply the doctrine of "plain error." In Syllabus Point 7 of *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996), this Court explained the application of the plain error doctrine, as follows:

An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Furthermore, Syllabus Point 7 of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), provides:

To trigger application of the "plain error" doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings.

Although counsel for the appellant failed to raise contemporaneous objections to the statements of the prosecuting attorney, we find the statements on their face to be of such magnitude as to justify a review upon a plain error analysis. We find that Syllabus Point 7 of *LaRock*, *supra*, and Syllabus Point 7 of *Miller*, *supra*, are dispositive of this issue.

In the instant case there are three areas of prosecutorial comments that the appellant argues constitute an impermissible comment on the appellant's failure to testify.

■ First are the comments relating to the appellant's "failure to accept responsibility." In her opening statement the prosecuting attorney said: "This case is about *accepting responsibility* when you are behind the wheel of a car and driving that car, and the Defendant, Mr. Murray's *failure to accept that responsibility*." (Emphasis added.) Later in her opening statement the prosecuting attorney also stated: "[T]he State is going to ask you, the jury, to force Brian Daniel Murray *to accept the responsibility* that he agreed to accept when he got behind that wheel of the car and he drove . . . ." (Emphasis added.) And in her closing argument the prosecuting attorney again repeated this line of argument by stating: ". . . *accepting responsibility;* the Defendant, Brian Daniel Murray, needs to *accept responsibility* for his conduct." (Emphasis added.)

We believe that these statements, standing alone, no matter what the intention of the prosecuting attorney was, served to accentuate and highlight the fact that the appellant sat silently without taking the witness stand. No matter how harmless the intent was of the prosecuting attorney, the remarks constituted an impermissible reference to the appellant's election not to testify.

■ The second line of comments are those relating to how the prosecuting attorney would prove the case. In her opening statement the prosecuting attorney made the following statement: "Now, he [defendant] did talk to the police and Mr. Murray *tells us* that he did go back and he looked and he just didn't see anything." (Emphasis added.) Later in her opening statement the prosecuting attorney said: "How do we intend to prove *what the Defendant knew?* It's a hard thing to do, *what's in somebody's mind,* what they saw, okay." (Emphasis added.) In her closing argument the prosecuting attorney repeated this line of argument by stating: "So, how do I prove this? [Failure to Render Aid at Accident Involving Death] Do I just ask *the Defendant,* 'Did you know? Did

you see him? Okay, you said you didn't know, you said you didn't see him, we'll let you [the defendant] go . . .'" (Emphasis added.)

These statements may be the most damning to the State's position. We believe that, when taken as a whole, these statements constituted an impermissible reference to the appellant's election not to testify. Again, no matter what the intention of the prosecuting attorney was, the statements served to accentuate and highlight the fact that the appellant sat silently without taking the witness stand. The prosecuting attorney's use of *"the defendant,"* when coupled with the other language used, was of such character that the jury would naturally and necessarily take the prosecuting attorney's statements to be a reminder that the defendant did not testify. This is especially true when coupled with the prosecuting attorney's *"failure to accept responsibility"* statements made by the prosecuting attorney during the opening statement and closing argument as previously discussed.

■ Finally, we consider the statement by the prosecuting attorney in closing argument that referred to the *testimony* of the defendant. The statement was: "That's a person that saw Justin McAnulty's bicycle at an hour when nobody could have seen it, if you believe the *testimony*—not the testimony, the statements—*of the Defendant."* (Emphasis added.)

■ While this statement may well have been a slip of the tongue, the inquiry does not end there. We must determine whether or not the statement was of such character that the jury would naturally and necessarily take the prosecuting attorney's statements to be a reminder that the defendant did not testify. We believe that this statement by the prosecuting attorney was such a reminder when considered in light of the other statements of the prosecuting attorney discussed above.[7]

---

7. We believe that in cases in which counsel makes an isolated improper remark and timely objection is made, the principle adopted in Syllabus Point 5 of *State v. Grubbs,* 178 W.Va. 811, 364 S.E.2d 824 (1987) should be followed:

. . . If either the prosecutor or defense counsel believes the other has made improper remarks to the jury, a timely objection should be made coupled with a request to the court to instruct the jury to disregard the remarks . . . .

As we have previously held in *Noe, supra,* statements made in final argument amounting to a comment on the failure of a defendant to testify constitute prejudicial error. Therefore, the first prong of *Sugg, supra,* is satisfied.

We also observe and conclude that the several statements made by the prosecuting attorney were not isolated, but rather were incorporated into both the opening statement and closing argument of the prosecuting attorney. We therefore conclude that the second prong of *Sugg, supra,* is satisfied.

Inasmuch as the appellant's awareness of whether or not he struck a deer or a person or some other object was central to the proof, and there being no other witnesses to the event, the appellant's failure to testify at trial carried heightened sensitivity with the jury. We therefore find that the third prong of *Sugg, supra,* is satisfied.

Finally, *Sugg, supra,* requires us to consider whether the comments of the prosecuting attorney were deliberate. With the exception of the last comment considered by us relating to the testimony of the defendant, we find that the statements made by the prosecuting attorney were deliberate. As previously noted, while we consider the intent of the prosecuting attorney in making statements to the jury, a greater concern is whether the statements were of such character that the jury would naturally and necessarily take the prosecuting attorney's statements to be a reminder that the defendant did not testify. Having already so found, we conclude that the fourth prong of *Sugg, supra,* is satisfied.

We therefore find that the prosecutor's statements in this case were prejudicial and reversible error. Because of our decision to reverse the defendant's conviction on the as-

signment of error as discussed above, we decline to address the appellant's other assignments of error.[8]

## IV.

Based on the reasons stated herein, we reverse and remand for a new trial.

Reversed and Remanded.

DAVIS, Chief Justice, dissenting.

(Filed June 29, 2007)

In this proceeding the majority opinion has granted Brain Daniel Murray (hereinafter referred to as "Mr. Murray") a new trial, because of purported misconduct by the prosecutor in commenting upon Mr. Murray's failure to testify. I agree fully with the dissenting opinion of Justice Maynard that the prosecutor's comments were taken out of context by the majority opinion and twisted to give the appearance of improper comments. Simply put, "no constitutional error was committed because the remark[s], when read in context, w[ere] not manifestly intended to be, nor w[ere] [they] of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *State v. Clark,* 170 W.Va. 224, 228, 292 S.E.2d 643, 648 (1982). While I agree with Justice Maynard's position, I have chosen to write a separate dissent to emphasize that, even if it had been properly found that the prosecutor commented on Mr. Murray's failure to testify, the error was harmless beyond a reasonable doubt.

### No Prejudice Resulted from the Prosecutor's Comments

This Court "has long ... held that Article 3, § 5 of the West Virginia Constitution and *W. Va.Code,* 57-3-6, make it ... reversible error for the prosecuting attorney to ex-

Syllabus Point 5, in part, of *Grubbs.* We also believe that when counsel makes an improper remark which is not objected to, the better practice is for the trial court to immediately instruct the jury to disregard the remark.

8. The appellant included in his assignments of error that the judge committed plain and prejudicial error because of the judge's several remarks to the jury throughout the trial concerning the possibility of "working extended hours." Appel-

lant argues that the judge's comments led to a compromised verdict. The facts in this case demonstrate how fragile jury deliberations can be when the jury engages in continuous and extended consideration of evidence and deliberations. For this reason we urge our judges when addressing juries to refrain from using language which might reasonably be considered as encouraging or demanding that a jury agree to work extended hours.

pressly comment before the jury upon the failure of the defendant to testify in his own behalf." *State v. Clark,* 170 W.Va. 224, 227, 292 S.E.2d 643, 647 (1982) (footnotes omitted) (citations omitted). *See also* Syl. pt. 3, *State v. Noe,* 160 W.Va. 10, 230 S.E.2d 826 (1976) ("It is prejudicial error in a criminal case for the prosecutor to make statements in final argument amounting to a comment on the failure of the defendant to testify."). However, we have also made clear that "[e]rrors involving deprivation of constitutional rights will be regarded as harmless ... if there is no reasonable possibility that the violation contributed to the conviction." Syl. pt. 20, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974). *See also* Syl. pt. 5, *State ex rel. Grob v. Blair,* 158 W.Va. 647, 214 S.E.2d 330 (1975) ("Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt."). Indeed, the general rule around the country is that "improper comments on a defendant's invocation of his right to remain silent are subject to a harmless error analysis and need not require reversal if the Court is convinced, beyond a reasonable doubt, that the error did not contribute to the verdict." *Jones v. State,* 748 So.2d 1012, 1021–1022 (Fla.1999). *See also Taylor v. State,* 254 Ga.App. 150, 561 S.E.2d 833, 836 (2002) ("Even if we assume that there was an improper comment on [defendant's] silence, such an impropriety does not automatically require reversal and may be harmless error."); *State v. Tucker,* 138 Idaho 296, 62 P.3d 644, 647 (Ct.App.2003) ("Commentary on a defendant's right to remain silent, if determined to be constitutional error, is subject to the harmless error analysis[.]"); *State v. Ezzell,* 642 S.E.2d 274, 278 (N.C.Ct.App.2007) ("[A] comment implicating a defendant's right to remain silent, although erroneous, is not invariably prejudicial. Indeed, such error will not earn the defendant a new trial if, after examining the entire record, this Court determines that the error was harmless beyond a reasonable doubt."); *State v. Shuler,* 353 S.C. 176, 577 S.E.2d 438, 444 (2003) ("While the State may not comment on the defendant's right to remain silent, an improper reference is subject to harmless error analysis."). In deciding the issue of whether a constitutional violation is harmless, the United States Supreme Court held in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), that the burden is on "the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24, 87 S.Ct. at 828.

Assuming, for the sake of argument, that the majority opinion got it right in finding the prosecutor made improper comments on Mr. Murray's failure to testify, the State has proven beyond a reasonable doubt that such comments did not contribute to the jury's verdict.

To begin, Mr. Murray's defense was that, on the night in question, he did not see what it was he hit with his vehicle and thought perhaps it was an animal. Although he allegedly stopped and looked around, he could find nothing to indicate what he had actually hit. Mr. Murray purportedly drove home, but immediately returned to the scene of the collision accompanied by his wife, and traveling in her vehicle. The two drove past the scene of the accident finding nothing, but did not exit the vehicle. Thereafter, Mrs. Murray phoned the local law enforcement office to report the collision. In response, a police officer arrived at Mr. Murray's home. Mr. Murray told the officer that he had hit an animal and wished to file a report for insurance purposes. The officer inspected the vehicle and completed a report, but did not visit the scene of the collision. The next morning, Mr. Murray again inspected his vehicle. Upon this inspection, Mr. Murray observed blood and shreds of clothing imbedded around his right headlamp. He allegedly returned to the accident scene and discovered the victim, already deceased, in tall grass. Mr. Murray then returned home and called 911.

The State theorized that Mr. Murray knew all along that he had struck a human; because, when Mr. Murray struck the victim, the victim's head smashed into Mr. Murray's windshield. Mr. Murray then slammed on his breaks, and the victim bounced off the car, skidded along the pavement, and came to rest on the shoulder of the road. The

State sought to establish that Mr. Murray had been drinking that evening and had feared being charged with driving under the influence of alcohol, which motivated him to move the victim's dead or dying body, along with his bicycle, into the tall grass, to deny knowledge of what he had hit, and to delay reporting the collision to the authorities.

In support of this theory, the State admitted into evidence photographs of the scene of the impact. Officer John Droppleman testified with respect to the photographs, and explained that they displayed gouged out areas of the shoulder of the road, which had been created by the victims body. The photographs also showed scuff marks left behind when the victim's body skidded along the road following the impact, and a pair of socks, apparently belonging to the victim, that were located in a separate area from where the body had been found.

The State's evidence demonstrated further, through photographs and testimony, extensive damage to Mr. Murray's vehicle resulting from the impact. Not only were there black marks on the bumper left by the victims bicycle seat, and remnants of the bicycle's paint on the car, but there was a deep dent in the passenger side fender, above the headlight, a dent in the car's hood, and most strikingly, the smashed windshield.

Dr. Hermada Mahmoud, Chief Medical Examiner for the State, testified that the victim had sustained blunt force trauma to his head and back that were consistent with being hit by a car and then thrown to the pavement. Dr. Mahmoud further stated that there were brush abrasions on the victim's left cheek and abdomen that were caused by "sliding the skin over a rough surface." Dr. Mahmoud stated that the brush abrasions were not consistent with the grassy area where the victim's body had been found.

The State also presented the testimony of two accident reconstructionists, Corporal Geoffrey S. Petsko, of the West Virginia State Police, and Charles Bean, Jr. These two witnesses presented evidence that the victim's body hit the pavement at two separate locations. The farthest landing location

of the victim's body was approximately eighty feet from the skid marks left by Mr. Murray's car, yet the body was found in tall grass approximately ten feet from the road, and approximately ninety-six feet from the skid marks. Furthermore, Mr. Bean opined that the bicycle, as found, was plainly not where it landed as part of an uncontrolled crash. With respect to the charge that Mr. Murray had failed to maintain control of his vehicle, these two witnesses demonstrated how the evidence established that Mr. Murray's vehicle had crossed the solid white line on the right side of the road in order to strike the victim.

Finally, to establish its theory that Mr. Murray had been driving under the influence of alcohol, the State presented evidence that the Murray's call to local authorities reporting the collision was not made until approximately one hour after the event. The State also presented the testimony of Officer Droppleman, who related that when he took Mr. Murray's statement, Mr. Murray said that he had consumed a glass of homemade wine while at a friends house prior to striking the victim, and that once he arrived home following the collision, he consumed a shot or two of scotch.[1] Likewise, Officer John Vanorsdale, Jr., the officer who responded to the Murray's call on the night of the collision, testified that when he arrived at the Murray home, Mr. Murray was holding a beverage that smelled of alcohol.

Without question the foregoing evidence was sufficient to convince the jury that Mr. Murray was guilty, beyond a reasonable doubt, of failing to render aid at an automobile accident involving death and of failing to maintain control of his automobile. Thus, assuming arguendo that the prosecutor's comments were improper, the State has proven beyond a reasonable doubt that those comments did not contribute to the jury's verdict. Accordingly, I dissent.

MAYNARD, Justice, dissenting.

(Filed June 8, 2007)

I would affirm the judgment of the circuit court below because I do not believe the

---

1. The State's theory was that Mr. Murray confessed to consuming a small amount of alcohol prior to driving home, and claimed to have quickly consumed additional alcohol once at home, in order to conceal the fact that he had been driving under the influence of alcohol.

prosecuting attorney made improper references to the defendant's election not to testify.

This Court has explained that, "[i]t is prejudicial error in a criminal case for the prosecutor to make statements in final argument amounting to a comment on the failure of the defendant to testify." Syllabus Point 3, *State v. Noe*, 160 W.Va. 10, 230 S.E.2d 826 (1976), *overruled on other grounds, State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Therefore, "[r]emarks made by the State's attorney in closing argument which make specific reference to the defendant's failure to testify, constitute reversible error and defendant is entitled to a new trial." Syllabus Point 5, *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979). We have further indicated that,

> The general rule formulated for ascertaining whether a prosecutor's comment is an impermissible reference, direct or oblique, to the silence of the accused is whether the language used was manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be a reminder that the defendant did not testify.

*State v. Clark*, 170 W.Va. 224, 227, 292 S.E.2d 643, 646 (1982) (citations omitted).

In finding that the prosecutor below improperly commented on the defendant's decision to not testify, the majority first cites the prosecutor's remarks concerning the defendant's failure to accept responsibility. Unfortunately, the majority completely misinterprets these remarks and takes them out of context. When one considers the prosecutor's comments in the context of the crimes charged against the defendant, it is clear that the prosecutor was not making specific reference to the defendant's failure to testify but rather the defendant's failure to accept his legal responsibility to stop and render aid at the scene of the accident. I am confident that this is what the prosecutor intended and it is how the jury understood the prosecutor's remarks. In fact, even the defendant's lawyer did not think the prosecutor's statements were error because he did not object and demand a mistrial at the time the statements were made. Simply put, the prosecu-

tor was commenting on the defendant's state of mind at the time he struck and killed Justin McAnulty and decided to leave the scene.

The defendant was charged with, *inter alia*, "Failure to Render Aid at Accident Involving Death." This crime is defined in W.Va.Code § 17C–4–1 (1999), which provides in part,

> (a) The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and shall remain at the scene of the accident until he or she has complied with the requirements of section three [§ 17C–4–3] of this article[.]

According to W.Va.Code § 17C–4–3 (1998), the driver of any vehicle involved in an accident resulting in injury to or the death of another person is charged with the responsibility of rendering aid to the injured person, "including the carrying, or the making arrangements for the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary." Essentially, the defendant was on trial for not fulfilling his legal obligation to stop and render aid to the person he hit with his car. In light of the nature of the crime alleged, which unlike most criminal statutes charges an affirmative duty, the prosecutor's comments are more warranted in this case than in those involving other crimes. Here, the defendant had an affirmative duty imposed by law to stop and render aid to Mr. McAnulty, and he failed to do so. Therefore, the fact that the defendant failed to meet his legal responsibility, which is the essence of the crime charged, made this a fair area of comment for the prosecutor. Accordingly, any reasonable juror would take the prosecutor's words to mean that the defendant is guilty of the crimes charged because he did not meet his legal responsibility to the decedent.

The majority also cites as improper a line from the prosecutor's closing argument, "So, how do I prove this? Do I just ask the Defendant, 'Did you know? Did you see him? Okay, you said you didn't know, you

said you didn't see him, we'll let you go ...." ' It is obvious to me that the prosecutor refers here to statements the defendant made to police officers during their investigation of the accident. Specifically, the prosecutor indicates that the jury may infer the defendant's intent from these statements. Although a defendant may remain silent without detriment, juries are called upon every day to examine the evidence before them and infer a defendant's mental state and intent from what the defendant may have said or done.

In addition, the defendant cites the prosecutor's slip of the tongue in confusing the defendant's statement to the police with testimony, an error that the prosecutor immediately corrected without prompting [1]. The record shows that this misstatement was acknowledged by the defendant's trial counsel to be without a change in the tone of the prosecutor's voice. Therefore, this mistake was minor and incidental and had no negative impact on the jury.

In sum, when one considers all of the prosecutor's statements as a whole, I fail to see how these statements come close to constituting specific references to the defendant's decision to not testify. There simply is no evidence in the record to suggest that these statements were manifestly intended to be a reminder of the defendant's election to not testify, nor can I imagine how a jury would necessarily take these statements as such. Instead, I see two wholly permissible arguments and an innocent, promptly-corrected slip of the tongue. In short, there was no improper commentary on the defendant's silence.

Further, it is very significant that the defendant failed to preserve the alleged error for appeal purposes. Therefore, in order to reverse the defendant's conviction, the majority found the prosecutor's comments to be *plain* error which is utter nonsense. This Court has held that "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects

the fairness, integrity, or public reputation of the judicial proceedings." Syllabus Point 7, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995). We have also held,

> An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Syllabus Point 7, *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996). Incredibly, the majority finds that the prosecutor's comments, which were not timely objected to and which at worst were susceptible to more than one interpretation, amounted to plain error. In other words, the majority actually concludes that the alleged error affected the defendant's substantial rights and seriously affected the fairness, integrity, or public reputation of the judicial proceedings. This is a gross misapplication of the plain error doctrine.

For anyone who fairly evaluates the evidence in this case in the real world, what really occurred here is plain. The defendant, who admitted he had been drinking, was either drunk or impaired at the time he struck Justin McAnulty. The defendant knew when the accident happened that he had struck and seriously injured or killed a person. But the defendant left Mr. McAnulty lying mortally wounded or dead because he did not want to be arrested and charged with the crime of DUI causing death. The next morning, after he was sober and knew he could pass a Breathalyzer or Blood Test, the defendant returned to the scene of the accident and pretended to find Mr. McAnulty's body for the first time. That is what really happened here and everybody familiar with

---

1. "The statement was: 'That's a person that saw Justin McAnulty's bicycle at an hour when nobody could have seen it, if you believe the *testi-* *mony*—not the testimony, the statements—*of the Defendant.'* (Emphasis added.)" Maj. op. at 517.

the evidence knows it. However, I long ago gave up believing that trials are a search for the truth.

Finally, by so unnecessarily restricting the arguments of prosecutors, the majority has effectively muzzled them, rendering them unable to fairly present their side of the case. In so doing, the majority has left the State at a significant disadvantage in the prosecution of criminal defendants which will result in more guilty persons going free. Of course, the ultimate losers are law-abiding citizens who depend upon the State to protect them, their loved ones and their property from dangerous criminals.

Accordingly, for the reasons stated above, I dissent.

BENJAMIN, Justice, concurring.

(Filed July 25, 2007)

I must disagree with my dissenting colleagues. The majority opinion did not take the prosecutor's prejudicial comments regarding the defendant's failure to testify out of context. The record amply demonstrates that the prosecutor repeatedly commented to the jury about Mr. Murray's failure to take responsibility for his actions and emphasized to the jury that the State was therefore unable to ask him to explain his actions. Those comments crossed the line under the well-established precedent of this Court, as well-demonstrated by the majority opinion. Unlike my dissenting colleagues, I refuse to speculate what the prosecutor really meant by these comments.[1] I likewise refuse to assume that a lay jury would be unaffected by such inappropriate comments. Under our law, a prosecutor may not comment upon a defendant's failure to testify. This is a bedrock principle in our system of jurisprudence. In view of the totality of the circumstances presented herein, including a prosecution case built upon inference and speculation, I cannot agree that the prosecutor's repeated

reference to Mr. Murray's failure to testify constituted harmless error.

I write separate to also address the other significant issue presented in this appeal, an issue not directly addressed by the majority nor mentioned by the dissenters. That issue is the pressure placed upon the jury in this matter to reach a verdict. Beginning with the *voir dire* process and continuing throughout the proceedings, the trial court made comments to the jury regarding the possibility of working extended hours and another jury's willingness to work late into the night the previous Friday. Ultimately, the case was submitted to the jury at 9:56 p.m. on a Friday evening under the threat of an impending snow storm. After deliberating for approximately two and one-half hours, the jury informed the judge that they were deadlocked on two charges (it then being 12:30 a.m. on Saturday morning). At that time, the jury vote was 11–1 guilty on the charge of "failure to render aid at accident involving death" and 10–2 guilty on the charge of "obstructing".

Instead of sending the jury home to reconvene their deliberations the following Monday morning, or even later during the weekend, the trial court read a *Blessing* instruction and sent the jury back to the jury room to resume deliberations. *Eleven minutes* later, the jury returned a split verdict on the two charges on which they were previously deadlocked, finding the defendant guilty on the charge of "failure to render aid at accident involving death" and not guilty of "obstruction." Such a dramatic change in votes in such a short period clearly shows that the jury may have compromised this verdict in order to go home. Under the circumstances, the jury may well have believed that they would not be permitted to leave until a verdict was rendered. While we can not be sure that such a belief was formed resulting in a compromised verdict, the real possibility that the same occurred is

1. I am unpersuaded by the argument presented by one dissenter that the prosecutor's comments regarding accepting responsibility referred to a critical element of the offense charged, failure to render aid at accident involving death, and not to

the defendant's failure to testify. Such an argument is, once again, based upon an assumption about the evidence and necessarily requires a State-biased inference of prosecutorial intent not apparent in the trial record.

enough to entitle the defendant to a new trial under the specific circumstances presented herein.[2] While I believe that trial courts are to be afforded significant discretion in conducting jury trials, the circumstances presented in this appeal crossed the line, in my opinion, of acceptable pressure upon a jury to reach a verdict. Accordingly, the defendant is entitled to a new trial.

**2.** In addition to requiring the jury to stay until 1:00 a.m. Saturday morning after having started the work day on Friday morning, the judge received a note from one juror after the verdict was rendered suggesting that the trial court not ask a jury to stay late again. It also appears that two jurors may have been ill at the time of the verdict and another called the circuit clerk's office the following Monday morning to express disagreement with the verdict rendered.