624 S.E.2d 527

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Terri Lynn SINGLETON, Defendant Below, Appellant.**

**No. 32673.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 1, 2005.

Decided Nov. 30, 2005.

---

Thomas Gene Truman, Raleigh County Prosecuting Attorney, Beckley, for Appellee.

John D. Wooton, Esq., Wooton Law Firm, Beckley, for Appellant.

PER CURIAM:

Appellant, Terri Lynn Singleton, appeals a jury verdict finding her guilty of conspiracy to possess a controlled substance with intent to distribute, alleging error by the trial court in admitting into evidence statements made by the appellant to a police officer prior to arrest. Appellant also appeals on the grounds that she was in custody during the interrogation without first being properly Mirandized. The judgment of the trial court is affirmed.

I.

On September 18, 2001, the Raleigh County drug task force received information from San Diego, California law enforcement authorities that a large amount of marijuana had been shipped to Beckley, West Virginia. After executing a search warrant, West Virginia officers found approximately ten pounds of marijuana shipped from San Diego to Beckley.

Based upon the shipping label, officers went to the residence of Ronald Rhodes, co-defendant of appellant Terri Lynn Singleton. Rhodes told the officers that he had been approached by the appellant and that he agreed to pick up the package for her. Rhodes further told the officers that appellant was to pay him $100.00 for picking up the package. At the suggestion of the officers, Mr. Rhodes called the appellant, consenting to have the conversation taped. In the telephone conversation, the appellant asked Rhodes, "Is it there?", thus implicating her in the conspiracy.

Based upon the officers' interview with Mr. Rhodes, Detectives R.L. Booker and Dustin Joynes went to the residence of the appellant. Appellant was not at home, but appeared at her residence at approximately 1:00 p.m. The officers then proceeded to interview the appellant. Detective Booker took the lead.

The interview took place in an unmarked police car with the appellant seated in the front passenger seat with the door open. Appellant was told that she was not under arrest and that she was free to go. Initially Detectives Booker and Joynes were in the car; Booker was in the front seat, Joynes was in the back. The appellant was not restrained. The officers were joined by two additional officers at different times during the interview. The interview took approximately forty minutes and was recorded.

Initially the appellant denied any criminal wrongdoing, but approximately ten minutes into the interview, the appellant confirmed her participation by admitting that she was to pay Mr. Rhodes $100.00 for his participation and that she was to receive $500.00 for routing the marijuana to other individuals.

During the interview, and before her admission, Detective Booker made a number of statements to the appellant relating to the seriousness of the matter and the implications that it had for her family and her eligibility for HUD-supported housing.[1] Additionally, during the early part of the interview, and before the appellant's admission, Booker confronted appellant with the fact that they had her voice on tape with Mr. Rhodes.

The officers concluded the interview and permitted the appellant to return to her house. The officers then left appellant's residence. Later the same day, after the officers decided that the appellant had provided misleading information regarding those higher up in the conspiracy, the appellant was arrested.

The appellant was charged with possession of a controlled substance with intent to deliver and conspiracy to possess with intent to distribute.

A suppression hearing was held regarding the statements the appellant made to the officers prior to her arrest. The trial court found that the statements were voluntary and were not the product of psychological coercion.[2] The appellant did not testify or offer any evidence at the suppression hearing.[3] The trial court also found that the appellant was not in custody at the time she made her voluntary statements to the law enforcement officials.

At trial the jury was permitted to hear a redacted CD audio of the appellant's statement and the jury was provided with an edited transcript of the CD. The jury was read a *Hardesty* instruction [4] prior to listening to the CD. After hearing the testimony of

---

1. Following are excerpts from the interview taken from the transcript wherein Detective Booker pointed to the implications that her participation in the conspiracy might have on her family. The statements were made at various times during the first part of the interview and before the appellant made her admission.

> Booker: ... Now, if you want to play hard ball, we'll just arrest you and .. you got to worry about your children. You're still public housing isn't it?
> ...
> Booker: And you got to worry about your "HUD" certificate and everything.
> ...
> Booker: And ... now you got a lot to loose [sic]. Now you ... you can be a defendant or you can be a witness. Now we know and I'm sure that we'll be able to prove this.... ok? We know about that. Now, I don't want you to play hard ball Terri. You got your man there and more importantly you got your child. I'm talkin' to you man to woman like 2 adults. Don't get caught up in this game ... loose [sic] your kid, go to the penitentiary and all that. We want to know the whole story about that package. We got ya!
> ...
> Booker: You know we aint' [sic] gonna fool with you cause we'll just come back there and arrest all of you. Like a thief in the night. We'll just come back and get ya. We thought maybe you wanted an opportunity to help yourself. If you don't, it don't make a difference to me.
> ...

> Booker: You ... you're just another citizen to go to jail. We don't care. Throw your name out in the paper. Kick you out of your house.
> ...
> Booker: You got a lot to loose [sic]. I mean we don't care.

2. The judge entered a seven-page order which describes in detail his findings of fact and conclusions of law. The judge concluded that based upon the totality of the circumstances, the appellant's statements were voluntary and not the product of psychological coercion from law enforcement agents.

3. The only person who testified at the suppression hearing was Detective Booker.

4. Syllabus Point 3 of *State v. Hardesty*, 194 W.Va. 732, 461 S.E.2d 478 (W.Va.1995), requires:

> Audio and video tape recording transcripts provided to a jury as an aid while the actual tapes are being seen or heard are not themselves evidence, should not be admitted into evidence, and should not be furnished to the jury during deliberations. Audio and video tape recording transcripts are demonstrative aids for the understanding of evidence; they should be so marked and identified; and the court should instruct the jury regarding the purpose and limited use of the transcripts.

the officers involved in the investigation and the appellant's mother, the jury returned a verdict of guilty to the conspiracy charge.[5] The appellant did not testify.

## II.

The appellant asserts that the trial court committed reversible error in admitting into evidence the recording of the police interrogation and her statements made to police officers for the following reasons: (1) Because the statements were obtained through coercion and that the appellant did not knowingly, willingly and voluntarily waive her constitutional rights, and (2) Because the statements were obtained while the appellant was in custody and without the benefit of her right to counsel, or having been appraised of her *Miranda* warnings.

■ In Syllabus Point 1 of *State v. Lacy,* 196 W.Va. 104, 468 S.E.2d 719 (1996), we set forth our standard of review for motion to suppress:

When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

■ In Syllabus Point 3 of *State v. Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978), we held that:

A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence.

*In accord,* Syllabus Point 7, *State v. Hickman,* 175 W.Va. 709, 338 S.E.2d 188 (1985); Syllabus Point 2, *State v. Stewart,* 180 W.Va. 173, 375 S.E.2d 805 (1988). In Syllabus Point 2 of *State v. Farley,* 192 W.Va. 247, 452 S.E.2d 50 (1994), we also held:

This Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making the determination. The holdings of prior West Virginia cases suggesting deference in this area continue, but that deference is limited to factual findings as opposed to legal conclusions.

■ In Syllabus Point 2 of *State v. Bradshaw,* 193 W.Va. 519, 457 S.E.2d 456 (1995), we held:

Whether an extrajudicial inculpatory statement is voluntary or the result of coercive police activity is a legal question to be determined from a review of the totality of the circumstances.

*In accord,* Syllabus Point 5, *State v. Milburn,* 204 W.Va. 203, 511 S.E.2d 828 (1998).

■ It is axiomatic in our jurisprudence that in order for an extra-judicial confession of an accused made to one in authority to be admissible in evidence, it must appear that the confession was freely and voluntarily made, without threats or intimidation, or some promise or benefit held out to the accused. *State v. Zaccario,* 100 W.Va. 36, 129 S.E. 763 (1925).

In the instant case the appellant alleges that the law enforcement officials used the "family approach" to extract a confession from the appellant. Appellant places substantial reliance upon *State v. Stotler,* 168 W.Va. 8, 282 S.E.2d 255 (1981) (per curiam) and *Lynumn v. Illinois,* 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963). We consider these and other cases cited by appellant distinguishable from this case and not controlling.

In *Stotler* the appellant was placed under arrest and held incommunicado for fourteen hours following his arrest. Additionally, appellant's wife was placed under arrest. The law enforcement officer allegedly told the appellant that if he didn't cooperate his children would be placed in a foster home, but that his wife would be released if he confessed. Both the appellant and his wife testified

---

5. Prior to trial the State dismissed the possession charge.

at the suppression hearing. Finally, unlike the instant case, the trial court made no findings of fact on whether the confession was procured by improper inducement.

In *Lynumn* the appellant was also placed under arrest. Appellant was encircled in her apartment by three police officers and the person who purportedly "set her up." The appellant testified at trial. The State conceded, at least for the purpose of arguing that receiving the confession into evidence was harmless error, that the totality of the circumstances disclosed by the record must be deemed to have combined to produce an impelling coercive effect upon the petitioner. Also, the case was tried by the trial court without a jury.

It is clear that *Stotler* and *Lynumn* are comparable primarily with respect to the statements made by the police officers to the appellant, but differ in other respects.[6] In the instant case we have the benefit of the trial court's detailed seven-page order which sets forth specific findings of fact and conclusions of law.

 In Syllabus Point 7 of *State v. Farley,* 192 W.Va. 247, 452 S.E.2d 50 (1994) we held, in part:

Representations or promises made to a defendant by one in authority do not necessarily invalidate a subsequent confession. In determining the voluntariness of a confession, the trial court must assess the totality of all the surrounding circumstances. No one factor is determinative.

 The record in this case clearly demonstrates that the trial court did precisely that which our jurisprudence requires in evaluating the admissibility of a confession, namely to apply the correct legal standard, a "totality of the circumstances" analysis. In

doing so, the court found that there was no evidence that demonstrated that law enforcement officials placed any undue pressure on the appellant, nor did the police threaten or improperly induce the appellant to extract a confession. Further, the trial court concluded that from the totality of the circumstances the appellant's statements were voluntary and not the product of psychological coercion from law enforcement agents. From our review of the record and the recorded interview it appears likely that the appellant made her admission primarily due to the disclosure of the recording of the taped conversation between the appellant and Mr. Rhodes—not due to law enforcement's statements relating to the appellant's family.

We therefore find that the trial court's factual findings are supported by the record, and the findings of fact are not clearly erroneous. Accordingly, we affirm the trial court's rulings with respect to the issue of the voluntariness of the appellant's statements to law enforcement officials.

 We now turn to the appellant's second assignment of error—whether the appellant's statements should not have been admitted into evidence because the appellant was in custody and had not been appraised of her *Miranda*[7] warnings. We also find this assignment of error without merit.

 We have held that:

An arrest is the detaining of the person of another by any act or speech that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest.

Syllabus Point 1, *State v. Muegge,* 178 W.Va. 439, 360 S.E.2d 216 (1987), *overruled on other grounds, State v. Honaker,* 193 W.Va. 51, 454 S.E.2d 96 (1994).[8]

---

**6.** We take this opportunity to state that we are troubled by some of the comments made by the law enforcement officers during the interview with the appellant. It is clear from a review of the record in this case that the officers are well-schooled in matters relating to interrogation techniques; however, standing alone and absent other relevant factors, we believe that such statements by police officers could well contaminate valuable evidence. The law enforcement officers in this case came perilously close to crossing the line.

**7.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**8.** In Syllabus Point 4 of *State v. Honaker,* 193 W.Va. 51, 454 S.E.2d 96 (1994), we overruled a portion of our holding in *Muegge,* stating:

Police involvement must be evident before a statement is considered involuntary under the West Virginia Due Process Clause. To the extent that *State v. Sanders,* 161 W.Va. 399, 242 S.E.2d 554 (1978), and *State v. Muegge,*

We discussed in *State v. Preece,* 181 W.Va. 633, 383 S.E.2d 815 (1989) *overruled on other grounds,* Syllabus Point 8, *State v. Guthrie,* 205 W.Va. 326, 518 S.E.2d 83 (1999),[9] that the factors to be considered by a trial court when making a custodial determination, while not inclusive, include: the location and length of questioning; the nature of questioning as it relates to the suspect offense; the number of police officers present; the use or absence of force or physical restraints by the police officers; the suspect's verbal and non-verbal responses to the police officers; and the length of time between questioning and formal arrest.[10] *Preece,* 181 W.Va. at 642, 383 S.E.2d at 823–24.

In this case, the trial court found that the appellant was not subjected to a lengthy interview,[11] that the appellant was not handcuffed, detained or otherwise restrained by the officers, that the officers cut short the interview to allow the appellant to leave for work, and that clearly the appellant was not in custody, detained, or otherwise in the control of the officers at any time during the interview. Additionally, the appellant was advised before the interview that she was not under arrest and that she was free to go, and during the interview the appellant was seated in the front passenger seat of the officer's vehicle with the passenger door open.

We conclude from the record that a reasonable person being interviewed by the police under the same circumstances as the appellant in this case could have considered his or her freedom of action to not have been curtailed to a degree associated with a formal arrest. Accordingly, the trial court's decision with respect to the custody issue is not clearly wrong or against the weight of the evidence. We therefore affirm the trial court decisions with respect to the appellant's second assignment of error.

178 W.Va. 439, 360 S.E.2d 216 (1987), hold otherwise, they are expressly overruled.

9. Syllabus Point 8 of *State v. Guthrie,* 205 W.Va. 326, 518 S.E.2d 83 (1999) overruled a portion of our holding in *Preece,* stating:

The special safeguards outlined in *Miranda* are not required where a suspect is simply taken into custody, but rather only where a suspect in custody is subjected to interrogation. To the extent that language in *State v.*

### III.

Based on the foregoing, we affirm the Circuit Court of Raleigh County.

Affirmed.

*Preece,* 181 W.Va. 633, 383 S.E.2d 815 (1989), and its progeny, may be read to hold differently, such language is expressly overruled.

10. The appellant was not formally arrested until approximately 9:30 p.m. She left the officers at approximately 1:40 p.m. on that same day.

11. The record reflects that the interview took approximately forty minutes.