663 S.E.2d 593

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Mindy KEESECKER, Defendant Below, Appellant.**

**No. 33377.**

Supreme Court of Appeals of West Virginia.

Submitted March 11, 2008.

Decided April 25, 2008.

Dissenting Opinion of Chief Justice Maynard June 27, 2008.

Darrell V. McGraw, Jr., Attorney General, Robert D. Goldberg, Assistant Attorney General, Charleston, for Appellee.

Mark McMillian, Mark McMillian—Attorney–at–Law, L.C., Charleston, for Appellant.

PER CURIAM:

This is an appeal by Mindy Keesecker (hereinafter "Appellant") from a June 30, 2006, final order of the Circuit Court of Mercer County sentencing the Appellant to three consecutive terms of one to five years in the penitentiary and five years probation upon her convictions of six counts of sexual assault in the third degree. The Appellant contends that the lower court committed several errors in the underlying trial and conviction. Subsequent to thorough review of the record, the briefs, the arguments of counsel, and applicable precedent, this Court reverses the Appellant's conviction and remands this matter to the lower court for a new trial.

## I. Factual and Procedural History

The Appellant, age thirty-four at the time of the alleged crimes, served as a worship leader and counselor for youth at a church attended by a fifteen-year-old male, J.G.[1] During the Appellant's service in such role, she and J.G. engaged in a sexual relationship from approximately January 2005 to approximately June 2005. Based upon knowledge of extensive telephone conversations and visits between J.G. and the Appellant, J.G.'s mother became concerned regarding the nature of the relationship, and the church minister was asked to discuss the situation with the Appellant. Although the Appellant initially agreed to curtail the relationship with J.G., it allegedly continued in earnest. According to J.G.'s testimony at trial, the relationship included several instances of oral sexual contact and intercourse. J.G's mother ultimately contacted the police when she discovered sexually explicit text messages on a phone purchased for J.G. by the Appellant.

When the Appellant became aware of the criminal investigation, she sought the advice of State Trooper Chuck Maynard, a family friend not directly involved with the investigation. Through the Appellant's brother, Trooper Maynard conveyed his opinion that

the matter could be concluded if the Appellant would appear at the state police office and provide a truthful statement. The Appellant subsequently presented herself to the police, voluntarily signed a waiver of rights, and confessed to the sexual activity with J.G.

Subsequent to a jury trial, the Appellant was convicted of six counts of third degree sexual assault. On appeal, the Appellant alleges that the lower court committed the following errors: (1) permitted the prosecutor to present an extensive closing argument premised upon religious theory, including biblical axioms and quotation; (2) failed to suppress the Appellant's confession; (3) permitted the prosecutor to refer to the Appellant's decision to remain silent and not testify at trial; (4) the State's possession of unlawfully obtained recordings by J.G.'s mother of her son's telephone conversations; and (5) the determination that there was a substantial risk of the Appellant's commission of another crime during a period of probation or conditional discharge.

## II. Standard of Review

■ In syllabus point four of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996), this Court explained as follows: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Similarly, in syllabus point three of *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000), explains as follows:

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

*Human Servs. v. Cheryl M.*, 177 W.Va. 688, 689 n. 1, 356 S.E.2d 181, 182 n. 1 (1987) (citations omitted).

---

1. "We follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties." *State ex rel. West Virginia Dept. of*

Utilizing those standards of review as guidance, this Court addresses the matters asserted by the Appellant.

### III. Discussion

### A. Impermissible Comment on Appellant's Failure to Testify

A primary assignment of error forwarded by the Appellant alleges that the prosecuting attorney made certain prejudicial remarks during closing argument which impermissibly commented upon the Appellant's failure to testify. Specifically, the prosecutor stated as follows:

And you heard her tell the same thing to the State Police. The exact same thing.

Well, let's talk about that for a little bit. They would want you to believe that you can't trust this statement she gave to the State Police. You never heard anybody come in here and say this was a false statement.

Subsequent to an objection by counsel for the Appellant and the court's overruling of that objection, the prosecutor continued: "No one came in here and said that she lied to the State Police. No one ever said the State Police wrote down wrong what she said."

### 1. Precedent Regarding Protection of Right Against Self-incrimination

█ The Appellant contends that the prosecutor's comments violate the Fifth Amendment of the Constitution of the United States and Article III, Section 5 of the Constitution of West Virginia.[2] West Virginia Code § 57–3–6 (1923) (Repl.Vol.2005)[3] serves as further protection of the right against self-incrimina-tion, providing that the failure of the defendant to testify cannot be the subject of comment before the court or jury. This Court has "scrupulously protected a defendant's right to remain silent." *State v. Murray*, 220 W.Va. 735, 739, 649 S.E.2d 509, 513 (2007). We have also consistently held that "[f]ailure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. Pt. 5, *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975).[4]

The sanctity of the right against self-incrimination has been extensively addressed by this Court. In *State v. Taylor*, 57 W.Va. 228, 50 S.E. 247 (1905), for instance, this Court explained that the rule has its origin in the principle that "the law, having brought the prisoner into court against his will, did not permit his silence to be treated or used as evidence against him." 57 W.Va. at 235, 50 S.E. at 249. In *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), this Court examined the rule and explained its premise as follows:

The basis for the rule prohibiting the use of the defendant's silence against him is that it runs counter to the presumption of innocence that follows the defendant throughout the trial. It is this presumption of innocence which blocks any attempt of the State to infer from the silence of the defendant that such silence is motivated by guilt rather than the innocence which the law presumes.

160 W.Va. at 240, 233 S.E.2d at 716.

█ The analysis of alleged impermissible prosecutorial comments on a defendant's

2. W.Va. Const., Art. III, Sec. 5 states as follows:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. Penalties shall be proportioned to the character and degree of the offence. No person shall be transported out of, or forced to leave the State for any offence committed within the same; nor shall any person, in any criminal case, be compelled to be a witness against himself, or be twice put in jeopardy of life or liberty for the same offence.

3. West Virginia Code § 57–3–6 provides as follows:

In any trial or examination in or before any court or officer for a felony or misdemeanor, the accused shall, with his consent (but not otherwise), be a competent witness on such trial or examination; and if he so voluntarily becomes a witness he shall, as to all matters relevant to the issue, be deemed to have waived his privilege of not giving evidence against himself and shall be subject to cross-examination as any other witness; but his failure to testify shall create no presumption against him, nor be the subject of any comment before the court or jury by anyone.

4. This Court has observed that "the state should studiously avoid even the slightest hint as to the defendant's failure to testify." *State v. Lindsey*, 160 W.Va. 284, 293, 233 S.E.2d 734, 740 (1977).

failure to testify proceeds according to the precepts announced in syllabus point six of *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995), as follows:

Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

This Court has been presented with numerous factual situations in which the remarks of a prosecutor were alleged to be impermissible. For example, in *State v. Noe*, 160 W.Va. 10, 230 S.E.2d 826 (1976), *overruled on other grounds by State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), the prosecutor observed as follows during closing: "Now, Freddie Joe Noe can't have his cake and eat it too. Now, you've either got an alibi or you don't." 160 W.Va. at 18, 230 S.E.2d at 831. This Court evaluated the prosecutor's comments on appeal, reasoning that "by inference, it comments on his failure to explain how his fingerprints got on the pane of glass." *Id.* This Court reversed the conviction and held as follows in syllabus point three of *Noe:* "It is prejudicial error in a criminal case for the prosecutor to make statements in final argument amounting to a comment on the failure of the defendant to testify." The *Noe* Court further explained its determination, as follows:

We recognize that a certain latitude must be given to an attorney either for the defense or for the prosecution in final argument. We are aware that the intensity of the moment may be productive of language which is intemperate or overdrawn. However, this can never justify disregard for constitutional and statutory guarantees either directly or by inference or innuendo.

*Id.*

■ In *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979), the prosecutor stated as follows in closing argument: "None of those facts are in dispute. No one said those things didn't take place...." 163 W.Va. at 695, 260 S.E.2d at 265. The prosecutor continued:

You know, there is one thing I know which has been hidden in this case.... If Fred Muth [defense counsel] can think of one reason, one lousy little reason at all why this girl would turn a finger at his client sitting over there, other than the fact that he committed this crime, he would tell you what it was.... There is a motive, you know what it is, I know what it is, everybody knows what it is. It is because he did it. Whether he hangs his head there and won't look at you or not, he did it, and there is no one in this Court Room that ever said he didn't do it....

*Id.* Reversing the conviction on appeal, this Court explained that "the remarks by the prosecution amounted to specific reference to Green's failure to testify." *Id.* In syllabus point five *of Green*, this Court reiterated: "Remarks made by the State's attorney in closing argument which make specific reference to the defendant's failure to testify, constitute reversible error and defendant is entitled to a new trial."

This Court again evaluated a remark which allegedly referenced the defendant's failure to testify in *State v. Nuckolls*, 166 W.Va. 259, 273 S.E.2d 87 (1980). This Court reversed the Appellant's conviction based upon the following comments made by the prosecuting attorney in closing:

If Lucille Nuckolls hadn't killed her husband that night we wouldn't be here. I haven't seen her, you haven't seen her, nobody in the Court Room has seen her. She is a person of mystery. No one has seen her. Did any one of the psychiatrists tell you this was catatonic schizophrenia? Catatonic is when you sit and stare with no expression at all. Don't say anything, you don't do anything, and it is also a way to snow people. It is a way to get in here and act and behave so that you say, "Why look at her. She is not paying any attention. She didn't do this, she didn't do that." It is what the psychiatrists told you when she took her examination didn't

they? I want to know what was in Lucille Nuckolls' mind when she killed her husband.

166 W.Va. at 262, 273 S.E.2d at 89. In rendering its decision, the *Nuckolls* Court discussed whether or not the statement constituted a comment on the defendant's failure to testify. This Court noted that while the "comments were ostensibly directed at the defendant's insanity defense, they clearly amounted to a comment upon the failure of the defendant to testify." *Id.; see also State v. Starcher,* 168 W.Va. 144, 145, 282 S.E.2d 877, 878 (1981) (finding prejudicial prosecutor's comment that defendant is the only man that knows what was in his mind at the time of drug transfer).

In *State v. Clark,* 170 W.Va. 224, 292 S.E.2d 643 (1982), this Court examined a statement by the prosecutor which allegedly constituted an impermissible comment on the defendant's failure to testify. After providing a litany of the State's evidence, the prosecutor remarked: "So, he [the officer] told you, ladies and gentlemen, that that is the way it was. There is no evidence to contradict that. There is no evidence to contradict what the defendant said there in the living room so we have to take that as what he said." 170 W.Va. at 226, 292 S.E.2d at 646.

In this Court's evaluation of the impact of that comment, we observed the established rule that in order to find the comment impermissible, the reviewing court must find that the language used was manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be a reminder that the defendant did not testify. This Court reasoned as follows:

A prosecutor's statement that the evidence is uncontradicted does not "naturally and necessarily" mean the jury will take it as a comment on the defendant's failure to testify. In many instances someone other than the defendant could have contradicted the government's evidence. *See, e.g., United States v. Lipton,* 467 F.2d 1161 (2nd Cir.1972), *cert. denied,* 410 U.S. 927, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973). It is only in those cases where the defendant alone could possibly contradict the government's testimony that remarks concerning lack of contradiction have been held forbidden.

170 W.Va. at 227, 292 S.E.2d at 647. The *Clark* Court ultimately concluded that no error had been committed by the comments, explaining that the "remark, when read in context, was not manifestly intended to be, nor was it of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Id.* at 228, 292 S.E.2d at 648. Furthermore, the *Clark* Court noted that "[t]his is not a case where the jury's attention was focused on defendant's failure to testify because he alone could contradict the government's evidence." *Id.*

A similar method of analysis was utilized in *State v. Bennett,* 172 W.Va. 131, 304 S.E.2d 35 (1983), wherein this Court focused upon the pivotal fact that the defendant was the *only* person who could have denied the drug offense. Thus, in the prosecution for an alleged delivery of a controlled substance, the prosecutor's repeated reminders that the State's evidence *had not been denied* could *only* have been referring to the *defendant's* absence of denial. This Court reversed the conviction, finding that the prosecuting attorney's remarks constituted an impermissible comment upon the defendant's failure to testify, since the defendant was the *only* one who could have denied the drug offense. The Court explained as follows:

This Court has permitted prosecutorial statements that did not specifically refer to the defendant's failure to testify. *See State v. Clark,* 170 W.Va. 224, 292 S.E.2d 643 (1982); *State v. McClure,* 163 W.Va. 33, 253 S.E.2d 555 (1979); *State v. Simon,* 132 W.Va. 322, 52 S.E.2d 725 (1949). However, those cases involved isolated remarks that certain evidence was uncontradicted, unlike the argument here which repeatedly emphasized the absence of refutation by the defense. Further, the prosecutor's statements that no one had denied that appellant sold the drugs amounted to an impermissible comment on the appellant's failure to testify, since appellant was the only one who could have denied it.

172 W.Va. at 134, 304 S.E.2d at 39; *see also U.S. v. Cotnam,* 88 F.3d 487, 497 (7th Cir.

1996), *cert. denied, Cotnam v. U.S.*, 519 U.S. 942, 117 S.Ct. 326, 136 L.Ed.2d 240 (holding that prosecutor's comment that regarding "uncontradicted," "undenied," "unrebutted," or "undisputed" evidence is considered violative of Fifth Amendment rights if *only* person who could have contradicted, denied, rebutted or disputed the evidence was the defendant himself); *Mannarino v. State*, 869 So.2d 650 (Fla.App.2004) (holding that comment on absence of explanation, as well as insufficiency of girlfriend's explanation, for defendant's possession of stolen credit cards was not harmless error since defendant was *only* person other than his girlfriend who could have explained the possession of the credit cards); *Dean v. State*, 690 So.2d 720 (Fla.App.1997) (holding that comment on defendant's failure to explain why he had been traveling under assumed name was susceptible to interpretation as comment on right to remain silent and not harmless where defendant was *only* person who could have testified about issue).[5]

This Court again addressed a comment allegedly violative of the Fifth Amendment right in *State v. Swafford*, 206 W.Va. 390, 524 S.E.2d 906 (1999). In that case, the prosecuting attorney stated as follows in closing argument:

> But for Walter Swafford and Mark Yoney, Joseph Hundley would be alive today. You didn't hear from Joseph Hundley from that witness stand. That's why the testimony of those girls was important.
>
> Where would the State have been in this case if those girls had a good lawyer like Mike Gallaher [defense counsel] and they had said, 'We ain't telling you nothing. We don't'—'We got our constitutional rights. We ain't telling you nothing.' Where would we be? Where would we be? All five of them would be walking the street, wouldn't they?

206 W.Va. at 393, 524 S.E.2d at 909. In reversing the conviction in *Swafford*, this Court explained:

> The general rule formulated for ascertaining whether a prosecutor's comment is an impermissible reference, direct or oblique, to the silence of the accused is whether the language used was manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be a reminder that the defendant did not testify.

206 W.Va. at 393–94, 524 S.E.2d at 909–10 (quoting *Clark*, 170 W.Va. at 227, 292 S.E.2d at 646–47.)

In *State v. Sprague*, 214 W.Va. 471, 590 S.E.2d 664 (2003), the prosecuting attorney asserted as follows in closing argument:

> Now there's been a lot of talk and I do want to talk to you about venue. The Defendant, as you have noted, as you've seen from this trial, has not contradicted any of the State's evidence or any of the State's testimony basically about the events that occurred at Sta[ ]dard Hall.

214 W.Va. at 474, 590 S.E.2d at 667. In evaluating the comments and reversing the conviction, this Court stated that "no matter what the intention of the prosecutor was, the prosecutor's comments necessarily served to accentuate and highlight the fact that the appellant sat silently without taking the stand, and no matter how harmless the intent, the remarks plainly amount to comment on the appellant's choice not to testify." *Id.*

**2. Analysis of Impact of Prosecutor's Statements in Case Sub Judice**

■ Syllabus point six of *Sugg*, as referenced above, requires this Court to engage in an analysis of four factors to determine whether the improper prosecutorial comment requires reversal of the conviction. The four

---

5. In *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992), the Seventh Circuit emphasized that such comments violate the Fifth Amendment only when "it is highly unlikely that anyone other than the defendant could rebut the evidence." 962 F.2d at 1260 (quoting *U.S. v. DiCaro*, 852 F.2d 259, 263 (7th Cir.1988)). It has also been held that the Fifth Amendment forbids a comment on the failure to call witnesses "when the only potential witness was the defendant himself." *U.S. v. Sblendorio*, 830 F.2d 1382, 1391 (7th Cir.1987), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988). In *Smith v. State*, 367 Md. 348, 787 A.2d 152 (2001), the Maryland court observed that a majority of courts have held that a prosecutorial comment on the uncontradicted nature of the evidence is not permitted where the only person who could have contradicted the evidence was the defendant.

factors include: "(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters." 193 W.Va. at 393, 456 S.E.2d at 474. The State's substantive evidence at trial, directly addressing the allegations of sexual impropriety, was limited to the testimony of J.G. and the reading of the Appellant's statement of confession. Thus, the prosecutor's statement that "no one" appeared to assert that the confession was false or mendaciously transcribed by the police was of particular force and effect under these circumstances.

Pursuant to this Court's analysis of the prosecutorial comments, this Court finds that the comments in this case constitute prejudicial error, satisfying the first prong of *Sugg.* While the remarks of the prosecutor were not particularly extensive, they were emphatic enough to produce a pronounced effect upon the jury. On three occasions during the soliloquy, the prosecutor addressed the absence of contradictory testimony with specific language, as follows: (1) "You never heard anybody come in here and say[;]" (2) "no one ever came in here and said[;]" and (3) "no one ever said...." The State did produce other significant evidence to establish the guilt of the accused, particularly in the form of the testimony of J.G. However, the Appellant's failure to testify at trial carried heightened sensitivity with the jury since only the Appellant could have contradicted the confession that was read to the jury.

*Sugg* also requires this Court to consider whether the comments of the prosecutor were part of a deliberate effort to divert jury attention to extraneous matters. While the Court obviously cannot discern the intentions of the prosecutor as he made the comments, it appears that the prosecutor was attempting to address the voluntariness of the Appellant's confession. In so doing, however, the prosecutor emphasized that no testimony had been presented to counter the confession, and the jury obviously comprehended the fact that only the Appellant could have specifically commented upon the truthfulness of her confession. In *Murray*, this Court explained that "while we consider the intent of the prosecuting attorney in making statements to the jury, a greater concern is whether the statements were of such character that the jury would naturally and necessarily take the prosecuting attorney's statements to be a reminder that the defendant did not testify." 220 W.Va. at 744, 649 S.E.2d at 518. Under these circumstances, we find that the prosecutor's statements were erroneous and prejudicial.[6]

■ The State suggests that any error regarding the prosecutor's comments should be deemed harmless. This Court has succinctly stated that "[e]rrors involving deprivation of constitutional rights will be regarded as harmless ... if there is no reasonable possibility that the violation contributed to the conviction." Syl. Pt. 20, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974); *see also State v. Jenkins*, 195 W.Va. 620, 629, 466 S.E.2d 471, 480 (1995).[7] In the attempt to determine whether a constitutional violation is harmless, the United States Supreme Court held in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967),

---

6. In considering the Appellant's motion for a new trial on this issue of the prosecutor's comments in closing argument, the lower court analyzed the applicable precedent and observed as follows: "Of course, we've had this one major issue on the motion for new trial. Although the Court's ruled against the Defendant. It's a reasonably close case and the Supreme Court may in fact see it differently."

7. *See also Taylor v. State*, 254 Ga.App. 150, 561 S.E.2d 833, 836 (2002) ("Even if we assume that there was an improper comment on [defendant's]

silence, such an impropriety does not automatically require reversal and may be harmless error."); *State v. Tucker*, 138 Idaho 296, 62 P.3d 644, 647 (2003) ("Commentary on a defendant's right to remain silent, if determined to be constitutional error, is subject to the harmless error analysis[.]"); *State v. Ezzell*, 182 N.C.App. 417, 642 S.E.2d 274, 278 (2007) ("[A] comment implicating a defendant's right to remain silent, although erroneous, is not invariably prejudicial" (internal quotations omitted)).

that the burden is on "the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. at 24, 87 S.Ct. 824.[8]

In *State v. DiGuilio*, 491 So.2d 1129 (Fla. 1986), the Florida court addressed the requirement that the State must prove beyond a reasonable doubt that the error did not contribute to the verdict in order to establish that a prosecutor's improper comment was harmless. The court explained the rigor of the test as follows:

> The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict.

491 So.2d at 1139.

Based upon the evidence before the jury, we cannot pronounce with any degree of certainty that the State has proven beyond a reasonable doubt that the prosecutor's comments did not contribute to the jury's verdict. As discussed above, the State presented essentially two elements tending to prove the Appellant's guilt: the testimony of J.G. and the Appellant's own confession. Only the Appellant could have contradicted the contents of her confession. In three distinct statements, the prosecutor specifically referred to the absence of any individual appearing to offer contrary evidence, drawing attention to the fact that the Appellant had not appeared to testify regarding her actions or her confession. Thus, we find reversible error in the State's impermissible comment on the Appellant's failure to testify. We cannot conclude beyond a reasonable doubt that the improper comment did not contribute to the guilty verdict, and we therefore

reverse the Appellant's conviction on this basis.

### B. Additional Assignments of Error

■ Based upon this Court's decision to reverse the Appellant's conviction on the assignment of error as discussed above, we limit our discussion of the Appellant's additional assignments of error to a few brief comments. First, the Appellant asserts that the lower court erred by permitting the prosecutor to refer to biblical theory and examples during closing argument. While no contemporaneous objection was made, the Appellant now contends that this Court should apply the plain error rule to reverse on the basis of biblical references. We decline to do so.

■ The plain error doctrine is utilized sparingly and only in extreme circumstances. This Court has explained that "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). This Court has also stated as follows:

> An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Syl. Pt. 7, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996).

The essence of the prosecutor's biblical citations in the case sub judice involved the prosecutor's perception of the jury's role as the "Throne of Judgment" and the judge's

---

**8.** *See also Good v. State,* 723 S.W.2d 734, 738 (Tex.Crim.App.1986) (stating that trial court, by overruling objection to improper argument, puts "the stamp of judicial approval" on improper comments, thus magnifying possibility for harm.).

role as the "Throne of Mercy." In evaluating these comparisons, the prosecutor cited various Old Testament characters and the judgments allegedly made by God upon their actions.[9] Because this Court cannot conclude that the prosecutor's biblical references impacted the Appellant's substantial rights and seriously affected the fairness, integrity, or public reputation of the judicial proceedings, we decline to utilize the plain error doctrine to address this allegation of error.

The Appellant also asserts that the lower court erroneously failed to suppress her confession.[10] We find this assignment of error to be without merit. The Appellant's theory regarding the inadmissibility of the confession was that the consequences of her brother's communication with a fellow church member, Trooper Chuck Maynard, caused her to believe that criminal charges would not be instituted if she cooperated with the police. However, Trooper Maynard did not offer any particular conception of resolution, no promises were made, and Trooper Maynard was not directly involved in the investigation. He simply informed the Appellant's brother that it was best to conclude the matter and to tell the truth. In support of her allegation of her understanding, the Appellant presented the opinions of Dr. Steven Dryer, a clinical psychologist, suggesting that the Appellant was emotionally vulnerable due to an unstable relationship with her husband.

■■■ With regard to the assessment of the voluntariness of confessions, this Court stated as follows in syllabus point five of *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975): "The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case." Syllabus point seven of *State. v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994), addresses the situation in which a defendant relies upon the representations of one in authority, as follows: "[R]epresentations or promises made to a defendant by one in authority do not necessarily invalidate a sub-

9. The prosecutor provided the following argument to the jury:

> And when God sat on the Throne of Judgment, he judged the actions of people. And when he was sitting on that Throne he determined whether the Nation or the people had sinned and he dealt with that and he judged them accordingly. That's your job. To judge the actions of the Defendant and decide accordingly whether she's guilty or not guilty.
>
> . . .
>
> The Judge sits upon the Throne of Mercy. It's his job, not yours, to determine what are the consequences of her actions. Not you. And the Judge even told you that in his instructions. He told you that your decision should be based upon the law and the facts of this case without sympathy toward anyone. Without sympathy toward the Defendant. Without considering the consequences of what happened, what may happen to her if you find her guilty. That's his job to determine that. It's not your job and it's not to enter into your deliberations. That's the Judge's job.
>
> . . .
>
> And once again the Bible is replete with examples of that, Moses, the great servant of God disobeyed God. God forgave him but he still had to deal with the consequences of his actions. He still was not able to enter into the Promise Land.
>
> King David, a person that the Bible says was a man after God's own heart, had a probably the deepest relationship with God of any person in the Old Testament. Wrote all these Psalms about his closeness with God. He sinned. Caused the death of a man by sleeping with that man's wife. And having that man killed so he could be with that man's wife. When the Prophet came to him and said God knows what you did, David fell on his face and he asked forgiveness. The Prophet Nathan said God forgives you but there's still consequences for your actions. Because of your actions the baby that you borne, that Bathsheba bears with you will die. Just because God forgives us, there's still consequences for our actions.
>
> And part of her consequences is that she's guilty of what she's done. She's guilty of all eleven of these counts of the indictment. And it's your duty as the judgers of the fact to find her guilty of each and every one of these charges.

10. On November 21, 2005, defense counsel moved to suppress all statements of the Appellant. During the January 27, 2006, hearing on the issue, defense counsel explained the defense theory that the police exploited Trooper Maynard's connection with the Appellant's brother. The lower court denied the motion to suppress, reasoning that the Appellant signed and acknowledged the waiver section of the Miranda rights form and was not under any disability which would have affected her understanding of those rights.

sequent confession. In determining voluntariness of a confession, the trial court must assess the totality of all the surrounding circumstances. No one factor is determinative." In *State v. Middleton*, 220 W.Va. 89, 640 S.E.2d 152 (2006), this Court explained: "Ultimately, this issue boils down to whether or not the incriminating statement 'was freely and voluntarily made, without threats or intimidation, or some promise of benefit held out to the accused.'" 220 W.Va. at 101, 640 S.E.2d at 164 (quoting *State v. Singleton*, 218 W.Va. 180, 184, 624 S.E.2d 527, 531 (2005)).

■ While the Appellant may have provided a confession with the hope that criminal charges would not be brought based upon the comments of her brother's state trooper acquaintance, such circumstance does not invalidate the confession as a matter of law. The Appellant presented herself and submitted a handwritten confession after being Mirandized and signing a waiver. She initiated the meeting with the police and appeared voluntarily. Upon retrial, the issue of whether the confession was voluntary may, at the Appellant's option, be argued again to the court as a matter of law and, ultimately, to the jury as an issue of fact, based upon the circumstances as shown by the retrial record.

■ The Appellant also asserts that phone conversations recorded by J.G.'s mother were improperly utilized by the police during the investigation. These recordings were not utilized during trial and should be distinguished from the text messages which provided the initial impetus for J.G.'s mother to contact the police. On February 7, 2006, defense counsel moved to dismiss the case and to exclude any evidence that was derived from the tape-recorded telephone call that was allegedly accomplished illegally. J.G.'s

mother had acted as a private individual in making the recordings. Trooper Christian, the investigating officer in the case, testified that he was unaware of any tape recorded conversations. Trooper Christian explained that the tape recordings did not serve as a foundation for the investigation and were not involved in any manner. In denying the defense motions on the issue, the lower court observed: "I don't think I have to rule now if it's legal or illegal for a parent to tape a phone conversation between their child and an adult. However, it appears to me clearly from the officer's testimony that they were not aware of this and it's not factor in their investigation." Upon the record before this Court, we agree with the assessment of the lower court. On that record, there is no indication that the recordings obtained by the mother were involved in the official investigation, and, in fact, the investigating officer testified that he was unaware of the existence of the recordings.

The Appellant also asserts that the lower court erred in denying probation to the Appellant. This Court has observed that "the decision as to whether the imposition of probation is appropriate in a certain case is entirely within the circuit court's discretion." *State v. Duke*, 200 W.Va. 356, 364, 489 S.E.2d 738, 746 (1997).[11] On the record before us, we find no abuse of discretion by the trial court in the denial of probation. If, upon retrial, the issue arises again, the matter is committed to the discretion of the trial court.

### IV. Conclusion

Based upon the foregoing discussion, this Court reverses the Appellant's conviction based upon the prosecutor's comments refer-

11. *See also* W.Va.Code § 62–12–3 (1988) (Repl. Vol.2005), providing as follows:

Whenever, upon the conviction of any person eligible for probation under the preceding section [§ 62–12–2], it shall appear to the satisfaction of the court that the character of the offender and the circumstances of the case indicate that he is not likely again to commit crime and that the public good does not require that he be fined or imprisoned, the court, upon application or of its own motion, may suspend the imposition or execution of sentence and release the offender on probation for

such period and upon such conditions as are provided by this article; but in no case, except as provided by the following section, shall the court have authority to suspend the execution of a sentence after the convicted person has been imprisoned for sixty days under the sentence. Any person released on probation must participate as a condition of probation in the litter control program of the county to the extent directed by the court, unless the court specifically finds that this alternative service would be inappropriate.

encing the Appellant's failure to testify at trial. This case is remanded for a new trial.

Reversed and Remanded.

MAYNARD, Chief Justice, dissenting:

(Filed June 27, 2008)

In this case, the appellant, Mindy Keesecker, a church worship leader, counselor and a person in a position of trust, was convicted of sexually assaulting a fifteen-year-old boy. The appellant presented several assignments of error; yet, the majority reversed her conviction for only one reason-improper comments by the prosecutor during his closing argument. I dissent from the majority's decision because I do not believe that the prosecutor made impermissible references to the appellant's failure to testify. Furthermore, even if the prosecutor's comments were improper, the error was clearly harmless. Accordingly, I would have affirmed the appellant's conviction.

In *State v. Clark*, 170 W.Va. 224, 227, 292 S.E.2d 643, 647 (1982), this Court explained that,

> [T]he prosecution is free to stress the strength of the government's case and to argue the evidence and reasonable inferences therefrom, and the prosecutor is not constitutionally forbidden from telling the jury the fact that the evidence on any given point in the case stands uncontradicted. A prosecutor's statement that the evidence is uncontradicted does not "naturally and necessarily" mean the jury will take it as a comment on the defendant's failure to testify.

The majority essentially ignored *Clark* in reaching its decision in this case. Even though *Clark* is the most factually on-point precedent, the decision is only briefly mentioned in the majority opinion. Instead of utilizing *Clark*, the majority misconstrued the prosecutor's comments and took them out of context in order to reverse the appellant's convictions based on cases where there was a direct reference to the defendant's failure to testify.

Contrary to the majority, I do not believe that the prosecutor's comments constituted prejudicial error. As this Court observed in *Clark*,

> The general rule formulated for ascertaining whether a prosecutor's comment is an impermissible reference, direct or oblique, to the silence of the accused is whether the language used was manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be a reminder that the defendant did not testify.

170 W.Va. at 227, 292 S.E.2d at 647. When the prosecutor's comments in this case are read in context, I am unable to find that they were manifestly intended to be, or were of such character, that the jury would have naturally and necessarily taken them to be a comment on the failure of the appellant to testify.

The record in this case clearly shows that the prosecutor did not make a direct reference to the appellant's failure to testify. Rather, he merely pointed out that no one had contradicted the statement the appellant gave to the state police. Similar comments were made by the prosecutor in *Clark*. In that case, the defendant was accused of murdering his wife in their home by shooting her once in the head with a sawed-off shotgun. The defendant claimed that his wife's death was an accident and made several statements to the police in that regard. During closing argument, the prosecutor, referring to a statement made by the defendant to the police, said, "*There is no evidence to contradict that. There is no evidence to contradict what the defendant said there in the living room so we have to take that as what he said.*" 170 W.Va. at 226, 292 S.E.2d at 646 (emphasis in original).

This Court concluded in *Clark* that the prosecutor's comments did not constitute a specific reference to the defendant's failure to testify and, therefore, were proper. In reaching that decision, this Court noted that it was apparent that the prosecutor was merely attempting to emphasize one piece of the State's evidence—the statement made by the defendant shortly after the crime was committed. The same is true in this case. At trial, the voluntariness of the appellant's confession was a hotly contested issue. The

appellant presented several witnesses, including her brother, a state trooper, and two experts, for the purpose of showing that her statement was not voluntary. The prosecutor's remarks at issue here were made just before he began to summarize the testimony of these witnesses and were obviously an attempt to emphasize one piece of the State's evidence—the appellant's confession. There is simply nothing in the prosecutor's remarks which could even obliquely suggest that the jury should draw an adverse inference of guilt because the appellant did not testify.

Even if the prosecutor's remarks were improper, I do not believe that the appellant was entitled to a reversal of her conviction. If error occurred, it was harmless. The record shows that the jury was instructed on the appellant's right not to testify and that they could not draw an inference of guilt from the fact that she did not take the stand. Moreover, the record indicates that the appellant was actually found not guilty of five counts. It seems to me that if the prosecutor's comments actually had the impact that the majority attributes to them, then the appellant would have been convicted of all counts.

Accordingly, for the reasons set forth above, I dissent.