# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 17-0981** (Morgan County CC-33-2017-F-8)

**Brandon E. Fleece,**
**Defendant Below, Petitioner**

**FILED**

**October 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Brandon E. Fleece, by counsel Eric S. Black, appeals the Circuit Court of Morgan County's October 17, 2017, sentencing order. Respondent State of West Virginia, by counsel Julianne Wisman, filed a response. On appeal, petitioner contends that the circuit court erred in denying his motion to suppress incriminating statements given by him and the evidence seized from his residence.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 28, 2016, Trooper Sam Smith initiated a traffic stop after he observed petitioner following another vehicle too closely and that petitioner's car did not have a visible inspection sticker. After Trooper Smith pulled petitioner over, petitioner, with whom Trooper Smith was familiar due to prior interactions, informed the officer that he did not have a driver's license because it had been suspended. Petitioner also volunteered that the vehicle registration did not belong to the vehicle in which he was driving, and that he was coming from his home and only intended to deliver cookies to his niece and nephew. Trooper Smith noted the odor of marijuana, but did not then inform petitioner that he noticed this odor. Once Trooper Smith returned to his vehicle to "run [petitioner's] information[,]" he also radioed another officer, Trooper Jeremy McDonald, for assistance.

When Trooper McDonald arrived at the scene, petitioner was seated in the front passenger seat of Trooper Smith's cruiser. Trooper Smith had requested that petitioner join him in his cruiser to "separate [himself] from any type of pursuit liability."[1] After Trooper Smith patted petitioner for weapons, petitioner sat in the front passenger seat of the cruiser without

---

[1]Petitioner's license was suspended because he ran from the police in Virginia.

1

handcuffs. Trooper McDonald was asked to retrieve petitioner's car title from petitioner's vehicle. Like Trooper Smith, Trooper McDonald noted the "strong odor of marijuana, extremely strong" when he was in petitioner's vehicle. Trooper Smith told Trooper McDonald he intended to get a search warrant for petitioner's residence, and he sent Trooper McDonald to petitioner's home to secure it and await the search warrant.

Meanwhile, Trooper Smith and petitioner made small talk while Trooper Smith completed his paperwork. During their conversation Trooper Smith told petitioner that he had information that petitioner was selling marijuana out of his home and asked petitioner if he had marijuana in the vehicle. Petitioner denied having marijuana in his vehicle and said only that he intended to deliver cookies to his niece and nephew. Seeing the cookies in the back seat of petitioner's vehicle and noting the strong odor of marijuana, Trooper Smith concluded that the cookies were "marijuana cookies." Trooper Smith informed petitioner that if he did not have marijuana in his vehicle, it must be in his home. Petitioner admitted to selling marijuana in the past and smoking it at his home. Trooper Smith then placed petitioner in custody to travel to the detachment and prepare a search warrant for petitioner's home. Petitioner made no additional incriminating statements.

Ultimately, Trooper Smith received and, along with Trooper McDonald, executed a search warrant at petitioner's residence. The officers recovered three gallon-size bags of marijuana, numerous oxycodone pills, paraphernalia, cookie dough, and other contraband. As a result of these events, petitioner was indicted in January of 2017 for one count of possession with intent to deliver marijuana, one count of possession with intent to deliver oxycodone, one count of driving with a suspended license, one count of driving without insurance, one count of improper use of registration, one count of following too closely, and one count of driving without a motor vehicle inspection.

Following his indictment, petitioner moved to suppress any statements elicited by Trooper Smith during the traffic stop and petitioner's subsequent arrest. Petitioner acknowledged that he made incriminating statements concerning his sale and use of marijuana, but he argued that the statements were made without having been informed of his *Miranda* rights.[2] Petitioner also sought to suppress the evidence seized from his residence. Trooper Smith's affidavit for the search warrant cited petitioner's statements as providing probable cause for the issuance of the warrant. Petitioner argued that because these statements were, according to him, illegally obtained, they could not be used to establish probable cause for the search warrant.

At the hearing on petitioner's motion to suppress, Trooper Smith testified concerning the traffic stop. In addition to recounting the details of the stop set forth above, Trooper Smith testified that one of his confidential informants had told him that petitioner was "selling large quantities of marijuana out of his residence." This information, coupled with the smell of marijuana emanating from petitioner's car, caused Trooper Smith to request "cover" from Trooper McDonald, and he determined that the particular stop would be a drug interdiction stop.

Trooper Smith further testified,

---

[2]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

[t]hrough the traffic stop it was found that in fact [petitioner's driver's license] was suspended. The tags on the vehicle were improper. He didn't have an inspection sticker and didn't have an insurance certificate with him all of this was enforcement action. As an interdiction officer we take the time to bring that person back to the vehicle. He's not in custody. [Petitioner] would not have been free to leave at that point under the circumstances of the traffic stop but he wasn't under arrest it was simply for my enforcement action. As he sat beside me I began to make small talk with [petitioner], advised him that I had information that in fact he was selling marijuana out of his house, and so forth[.]

Trooper Smith explained that petitioner would not be permitted to drive the vehicle home on account of his suspended driver's license, and that petitioner was aware that the vehicle needed to be towed, but Trooper Smith clarified that petitioner was "free" in his cruiser without handcuffs and that petitioner knew he was not in custody. The trooper further testified that petitioner remained in his cruiser for approximately seven to ten minutes, and twenty to thirty minutes elapsed between the time he initially stopped petitioner and his eventual arrest. Finally, Trooper Smith testified that he advised petitioner of his rights under *Miranda* once he was arrested and placed in custody.

On July 5, 2017, the circuit court denied petitioner's motion to suppress. The court concluded that petitioner was not in custody when he spoke with Trooper Smith in the cruiser and that probable cause existed for issuance of the search warrant. Thereafter, the parties entered into a conditional plea agreement. Petitioner agreed to plead no contest to the possession with intent to deliver marijuana count, but he retained the right to appeal the circuit court's ruling on his motion to suppress.

The parties appeared for sentencing on October 3, 2017. The circuit court sentenced petitioner to an indeterminate term of not less than one year nor more than five years of incarceration; however, the circuit court suspended this sentence and imposed five years of supervised probation with a special term and condition that petitioner complete fifty hours of community service. Petitioner's sentence was memorialized in the circuit court's October 17, 2017, sentencing order, and it is from this order that petitioner appeals.

On appeal, petitioner asserts that he was in custody when he was in the cruiser and made incriminating statements, but that he was not provided with *Miranda* warnings prior to being placed in the cruiser. Petitioner argues that the traffic stop "quickly escalated into an accusatory, custodial environment," and a reasonable person would have considered his freedom of movement restrained as though formally arrested. Petitioner states that this "constructive custody" necessitated *Miranda* warnings, and, because he was not provided with these warnings, his incriminating statements should have been suppressed.

Additionally, because the search warrant for his residence was predicated, in part, on his allegedly improperly obtained incriminating statements, petitioner argues that the evidence seized from his home should have likewise been suppressed. Petitioner contends that without the

incriminating statements, there was insufficient probable cause for issuance of the search warrant.

Petitioner also takes issue with Trooper Smith's statement in the affidavit that "TFC Smith, having used several informants, prior to this date, has attempted to make marijuana purchases from [petitioner.]" Petitioner contends that Trooper Smith admitted at the suppression hearing that no confidential informant had actually attempted to purchase drugs from petitioner. Petitioner argues that these statements in the affidavit were "inaccurate at best," which, petitioner contends, further illustrates that probable cause for the warrant was lacking.

In reviewing a ruling on a motion to suppress, we apply the following standard of review: "On appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference." Syl. Pt. 3, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994).  Further,

> an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. Pt. 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

With respect to the circumstances necessitating *Miranda* warnings, it is well-settled that "[t]wo elements must be present before *Miranda* warnings are required: first, the person must be in custody, and, second, he or she must be interrogated." *State v. Farley*, 238 W.Va. 596, 607, 797 S.E.2d 573, 584 (2017), *citing State v. Honaker*, 193 W.Va. 51, 60, 454 S.E.2d 96, 105 (1994). "Custodial interrogation" occurs when law enforcement initiates questioning "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*, *citing Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602. We look to "whether a reasonable person in the suspect's position would have considered his or her freedom of action curtailed to a degree associated with a formal arrest." *Id.* at 601, 797 S.E.2d at 578, Syl. Pt. 3, in part (citation omitted). This is an objective analysis that "does not depend on the subjective view of either the person interrogated or the officers who conduct the interrogation." *Id.* at 608, 797 S.E.2d at 585 (citation omitted).

Further, "custody" is a "term of art that specifies circumstances that are thought generally to present a serious danger of coercion" and "where a 'reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.'" *Id.* (citation omitted). In determining whether an individual is subject to custodial interrogation, a non-exhaustive list of factors to consider includes

the location and length of questioning; the nature of the questioning as it relates to the suspected offense; the number of police officers present; the use or absence of force or physical restraint by the police officers; the suspect's verbal and nonverbal responses to the police officers; and the length of time between the questioning and formal arrest.

*Id.* at 601, 797 S.E.2d at 578, Syl. Pt. 4 (citation omitted).

Applying these factors to the case at hand, we find no error in the circuit court's conclusion that petitioner was not subject to custodial interrogation so as to necessitate the giving of *Miranda* warnings. Trooper Smith questioned petitioner in his cruiser for approximately ten minutes. Further, although Trooper McDonald was present at the scene for a short period of time, he testified at the suppression hearing that he was not present for petitioner's questioning. In *State v. Singleton*, 218 W.Va. 180, 624 S.E.2d 527 (2005), we found that the defendant was not subject to custodial interrogation where she was questioned by two officers in a police cruiser for approximately forty minutes. 218 W.Va. at 186, 624 S.E.2d at 533. In *Farley*, we found that the defendant had not been subject to custodial interrogation where he was questioned at the police station for "only seventy-five minutes." *Farley*, 238 W.Va. at 608, 797 S.E.2d at 585.

Additionally, petitioner was not handcuffed nor was he locked in the back of the cruiser. As in *Farley*, Trooper Smith's questioning was "cordial and no force or restraint was used." *Id.* Indeed, the circuit court characterized the questioning as "casual and friendly, better described as a conversation rather than an interrogation." The circuit court also detailed that Trooper Smith and petitioner were "cordial and even joking at times." Accordingly, we find no error in the circuit court's denial of petitioner's motion to suppress these statements.

We similarly find no merit to petitioner's arguments relative to the search warrant. As outlined above, petitioner's statements were not unlawfully obtained; therefore, they supplied a proper basis upon which to seek a search warrant. We also find no inaccuracies in Trooper Smith's affidavit concerning his confidential informant's "attempt" to purchase drugs from petitioner. The confidential informant told Trooper Smith that he could purchase marijuana from petitioner and had in the past, and Trooper Smith and the informant had arranged a date and time to coordinate the controlled drug buy. The buy, however, was not completed due to the confidential informant's arrest. Nonetheless, Trooper Smith and the informant took steps toward initiating the controlled drug buy, and we do not find that Trooper Smith's characterization of these steps as an "attempt" amounts to an inaccuracy. Accordingly, we find no error in the circuit court's denial of petitioner's motion to suppress the items seized from his home.

For the foregoing reasons, the circuit court's October 17, 2017, sentencing order is hereby affirmed.

Affirmed.

**ISSUED**: October 12, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II, suspended and therefore not participating